UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOVEREIGN BANK,<br><br>      Plaintiff,<br><br>  - against -<br><br>MICHAEL J. ELLIS, DOUGLAS MOSKOWITZ, STEVEN F. PAUL, THE MICHAEL J. ELLIS REVOCABLE TRUST, THE DOUGLAS MOSKOWITZ REVOCABLE TRUST,<br><br>      Defendants. | **MEMORANDUM OPINION<br>AND ORDER**<br><br>09 Civ. 02597 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Sovereign Bank brought this action to enforce a guaranty agreement entered into by Defendants Michael Ellis, Douglas Moskowitz, Steven Paul, The Michael J. Ellis Revocable Trust, and The Douglas Moskowitz Revocable Trust (the "Guaranty Agreement"). (Cmplt. ¶¶ 10-16) Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to transfer this action to the District of Kansas pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, Defendants' motion (Doc. No. 6) is DENIED.

## DISCUSSION

**I. BACKGROUND[1]**

    In 2002, Plaintiff entered into a Master Loan and Security Agreement ("Loan Agreement") with Commercial Leasing Corporation ("Borrower"). (Cmplt. Ex. A) Defendant Ellis signed the Loan Agreement on Borrower's behalf.

---

[1] For purposes of this motion, no party has disputed the facts described below.

(Id. at 17)  Under the Loan Agreement, Plaintiff agreed to provide Borrower with loans that would finance Borrower's own equipment leases and loan transactions with other entities (the "Assigned Transactions").  (Id. at 1)  A single loan under the Loan Agreement – referred to as a "Loan Amount" (Cmplt. Ex. A §§ 1.1-1.2) – provided financing for more than one Assigned Transaction.  (See Def. Br. at 6-7)

The loans made under the Loan Agreement were secured by Borrower's interests in the Assigned Transactions.  (Cmplt. Ex. A at 1)  If an Assigned Transaction went into default, Borrower agreed to pay Plaintiff a "Repayment Amount," which is defined in Section 5.2 of the Loan Agreement as an amount that is calculated based on the unpaid payments and net present value of future payments relating to the Assigned Transaction.  (Id. § 5.1(a))  However, the Loan Agreement caps Borrower's liability with respect to any particular Loan Amount at a "Maximum Loss Amount" "equal to ten percent (10%) of the Loan Amount for each respective loan."  (Id. § 5.1(f))

To induce Plaintiff to enter into the Loan Agreement, Defendants entered into the Guaranty Agreement, in which they "guarantee[d] to [Plaintiff] . . . the due and punctual payment, performance and discharge of all obligations and liabilities . . . of Borrower" under the Loan Agreement.  (Cmplt. Ex. B; see also Cmplt. Ex. A § 5.7 ("Personal Guarantees"))  The Guaranty Agreement states that "[n]o modification, waiver or discharge of the liability of any Guarantor shall be valid unless in writing, signed and subscribed by [Plaintiff]."  (Cmplt. Ex. B at 2)  It also contains a forum selection clause in which Plaintiff and Defendants "agree[d] that all legal actions or proceedings between . . . [them] must be brought in a court of competent jurisdiction in the State of New York[,] County of New York, the Guarantors hereby waiving objections to summons,

service of process, personal jurisdiction over the person or venue of any such court, unless [Plaintiff] . . . shall give its express written consent . . . ." (Id. at 2-3)

## II.     DEFENDANTS' MOTION TO DISMISS

In deciding Defendants' motion, this Court must determine whether the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Defendants, however, have not directly addressed whether Plaintiff has pled facts sufficient to state a claim for enforcement of the Guaranty Agreement.  Instead, they offer three meritless arguments as to why Plaintiff cannot prevail on such a claim.

First, Defendants argue that Plaintiff is not entitled to recover the full amount it demands in the Complaint – i.e., the total Repayment Amounts relating to twelve Assigned Transactions (Cmplt. ¶¶ 13, 16) – because the Loan Agreement caps the Borrower's repayment obligation at 10% of the Repayment Amounts.  (Def. Br. at 10-12) This argument fails for two reasons.  As an initial matter, it relates to whether Plaintiff will ultimately be successful in proving that it is entitled to the full amount of damages it seeks, which is not the issue the Court must decide.  See Village Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (in deciding a Rule 12(b)(6) motion, "[t]he issue is not whether a plaintiff will ultimately prevail" (internal quotation omitted)).

Moreover, Defendants' argument is based on a mischaracterization of the terms of the Loan Agreement.  As stated above, the term "Maximum Loss Amount" is explicitly defined in reference to the total Loan Amount for any particular loan, which may cover several Assigned Transactions.  (See supra p. 2)  Defendants acknowledge that the twelve defaulted transactions listed in the Complaint relate to four loans, and do not

assert that the amount Plaintiff seeks to recover is greater than ten percent of the relevant loan amounts. (Def. Br. at 6-7) Therefore, Defendants' argument is baseless.[2]

Second, Defendants argue that Plaintiff's claim is not ripe because the amounts the Borrower must repay under the Loan Agreement cannot be determined until Plaintiff "realizes all Recovery Amounts" (Def. Br. at 12-13), which are defined as "the aggregate of all amounts recovered from all sources by Borrower or Lender with respect to [a] . . . Defaulted Transaction and related Transaction Collateral. . . ." (Cmplt. Ex. A § 5.1(e)) Defendants further contend that Plaintiff must sell any Transaction Collateral before the Guaranty Agreement can be enforced. (Def. Br. at 13)

Defendants' argument, however, finds no support in the language of the Loan Agreement or the Guaranty Agreement. Neither agreement contains any provision requiring Plaintiff to realize any possible recovery before demanding repayment from the Borrower or before enforcing the guaranty. To the contrary, the Loan Agreement explicitly states that Borrower is liable for paying the "Repayment Amount" (Cmplt. Ex. A § 5.1(a)), which is defined without reference to the "Recovery Amount" (id. at § 5.2(a)). The Guaranty Agreement states just as explicitly that the guarantors must perform Borrower's obligations (Cmplt. Ex. B), which include payment of the Repayment Amount. While Defendants' maximum liability may ultimately be calculated

---

[2] In their reply brief, Defendants argue that the 10% limitation must apply to each defaulted transaction because "the term 'Maximum Loan Loss' under Section 5.1(f) relies upon the definition of the term 'Loan Loss Amount.'" (Def. Reply Br. at 2) This argument is based on an incorrect description of the Loan Agreement. As stated above, Section 5.1(f) defines the term "Maximum Loss Amount" – not a term called "Maximum Loan Loss" – and defines that term as "ten percent (10%) of the Loan Amount" – not ten percent of the "Loan Loss Amount" – "for each respective Loan." (Cmplt. Ex. A § 5.1(f))

4

by taking into account any "Recovery Amounts" that have been realized, there is no contractual provision that makes Plaintiff's right to enforce the Guaranty Agreement contingent on its first having attempted to realize a "Recovery Amount" by selling the Transaction Collateral.[3]

Finally, Defendants argue that the Guaranty Agreement was "modified in writing" to cover only those Assigned Transactions entered into before July 2006, and that many of the defaulted transactions listed in the Complaint are therefore not covered by the Guaranty Agreement. (Def. Br. at 13-15) This argument, too, has numerous deficiencies. First, it relates to the amount of damages Plaintiff may eventually recover, not to whether Plaintiff has alleged facts on which it could plausibly be entitled to relief. Second, as discussed in detail below, the purported written modification is an e-mail offered by Defendants which is extrinsic evidence that the Court may not consider in determining whether the allegations in the Complaint state a claim. Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008) ("In deciding a motion to dismiss, a court may consider the pleadings and attached exhibits, statements, or documents incorporated by reference, and matters subject to judicial notice.").[4]

---

[3] Indeed, Section 5.2(c) of the Loan Agreement contemplates that there may not have been any recovery at the time of repayment, insofar as it states that "[u]pon receipt of the Repayment Amount, [Plaintiff] shall . . . promptly reassign the subject Transaction and the related Transaction Collateral to Borrower." (Cmplt. Ex. A § 5.2(c) (emphasis added)) This provision makes no sense unless the parties envisioned that the Borrower could potentially pay a Repayment Amount prior to the sale of related Transaction Collateral.

[4] Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court, . . . [a] motion [under Rule 12(b)(6)] must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Neither party has requested that the Court treat Defendants' motion as one for summary judgment, doubtless because summary judgment as to the purported modification of the Guaranty Agreement would

Third, the purported written modification consists of a November 15, 2007 e-mail from Jerry Rosen, a Senior Vice President at Sovereign Bank, to individuals whom Defendants do not identify, which states: "I believe sometime around July, 2006 we agreed to fund new business without requiring the PG [personal guaranties][5] but the PG's remain in place for any of the prior business." (Def. Ex. 3)  Defendants have not offered any case law support for their assertion that an e-mail (apparently to non-parties) concerning a party's "belief" about a past (apparently oral) agreement to modify a contract can be deemed a written modification of that contract.

### III.  DEFENDANTS' MOTION TO TRANSFER

Defendants move in the alternative to transfer this action to the District of Kansas pursuant to 28 U.S.C. § 1404, notwithstanding the mandatory New York forum selection clause in the Guaranty Agreement.  In deciding whether transfer is appropriate, courts consider the following factors:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

---

clearly be inappropriate at this stage of the proceedings. Cf. Brown v. Austin, No. 05-Civ.-9443(PKC), 2007 WL 2907313, at *1 (S.D.N.Y. Oct. 4, 2007) (declining to convert motion to dismiss into summary judgment motion and refusing to consider extrinsic evidence submitted by moving defendants).

[5]  Defendants do not explain what "PG" was intended to mean, but the Court assumes that it means "personal guaranties."

6

Dealtime.com v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000).[6]

The "party seeking transfer[] bears the burden of establishing its propriety." Orix Credit Alliance, Inc. v. Mid-South Materials Corp., 816 F. Supp. 230, 234 (S.D.N.Y. 1993). A plaintiff's "choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 395 (S.D.N.Y. 2006) (internal quotation omitted). Furthermore, while a forum selection clause is not dispositive of the analysis, it is "a significant factor that figures centrally in the . . . court's calculus," and a party seeking transfer away from the selected forum "must demonstrate exceptional facts explaining why [it] should be relieved from [its] contractual duty." Id. (internal quotations omitted).

Defendants have not met their burden of showing that the above-cited factors weigh strongly in favor of transfer, much less that "exceptional facts" warrant excusing compliance with the forum selection clause here. Defendants' first argument concerning transfer – the location of non-party witnesses in Kansas who will testify concerning the purported modification of the Guaranty Agreement – does not weigh in favor of transferring the case. (Def. Br. at 19) Defendants have not asserted that the non-party witnesses would be unwilling or unable to testify in New York, nor have they "shown how they will be prejudiced by presenting the testimony of these witnesses through depositions." Orix, 816 F. Supp. at 235 (rejecting argument that transfer was warranted because witnesses who could testify that defendants had been released from

---

[6] There appears to be no dispute that the action could properly have been brought in the District of Kansas, which is a prerequisite to transfer under 28 U.S.C. § 1404(a). Dealtime.com, 123 F. Supp. 2d at 755.

7

guaranties resided outside of New York, where there was no assertion that deposition testimony would be inadequate).

The fact that Defendants may have indemnity claims against third parties who reside in Kansas also does not weigh in favor of transferring the case. "[W]hile weight is given to [the inability of a party to bring a third-party action in the same district], . . . the convenience of the parties is given at least equal weight." Turner v. Hudson Transit Lines, Inc., 724 F. Supp. 242, 244 (S.D.N.Y. 1989). Here, the New York forum selection clause "is determinative as to the convenience of the parties." Richardson Greenshields Sec., Inc. v. Metz, 566 F. Supp. 131, 134 (S.D.N.Y. 1983).

Because Defendants have not shown that any considerations in favor of transfer strongly outweigh Plaintiff's choice of forum and the forum selection clause agreed to by the parties, transfer to the District of Kansas is not appropriate.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss or transfer (Doc. No. 6) is DENIED. The Clerk of the Court is directed to terminate Defendants' motion.

Dated: New York, New York  
       July 23, 2009

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge

8